UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JEFFREY D. LANDFRIED, on
behalf of himself and all
others similarly situated,

              Plaintiff,

        v.

SPOKANE COUNTY, STEVEN
TUCKER, SPOKANE PROSECUTING
ATTORNEY, and BOUNCEBACK,
INC., a foreign corporation,

           Defendants.

NO. CV-09-360-EFS

**ORDER GRANTING DEFENDANTS'
JOINT MOTION FOR SUMMARY
JUDGMENT**

A hearing occurred in the above-captioned matter on April 20, 2011. Richard D. Wall appeared on Plaintiff Jeffrey D. Landfried's behalf; Hugh T. Lackie, Heather C. Yakely, and David L. Broom appeared on Defendants' behalf. Before the Court was Defendants' Joint Motion for Summary Judgment (ECF No. 43). Having reviewed the submitted materials and relevant authority and hearing from counsel, the Court was fully informed and granted the motion. This Order memorializes and supplements the Court's oral rulings.

///

//

/

ORDER * 1

# I.   BACKGROUND[1]

In 2001, BounceBack, Inc. ("BounceBack") entered into an agreement with Spokane County Prosecuting Attorney Steven Tucker establishing Spokane County's Check Enforcement Program ("CEP").[2]  The CEP's purpose is to collect debts on returned or dishonored checks and provide those funds as restitution to victims.   Under the CEP, BounceBack sends letters, which are printed on the Prosecuting Attorney's Office's letterhead, to check makers that have been returned unpaid due to

---

[1] The parties submitted a statements of material facts (ECF Nos. 45 & 51).   The Court treats any facts agreed to by the parties as established consistent with Federal Rule of Civil Procedure 56(d), and sets these forth in this "Background" section without a reference to an ECF number.  Any facts supported by a citation to the record are disputed and are presented in the light most favorable to Plaintiff.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).   Defendants cite to a letter in which the Department of Licensing denied BounceBack a collection agency license, finding that the collection agency statute (chapter 19.16 RCW) does not apply to BounceBack in its duties of administering the CEP on behalf of the Prosecuting Attorney.  (ECF No. 55, Ex. 1.)   Plaintiff objects to the letter as hearsay evidence.  Because the letter was offered to prove the truth of the matter asserted therein – that the WCAA does not apply to the CEP and that BounceBack need not obtain a collection agency license as a result– it is inadmissible.  *See* Fed. R. Evid. 801(c).

[2]   The contract was renewed in 2004 and 2006.

ORDER * 2

"insufficient funds," "non-sufficient funds," a "closed account," a "stop payment," or "no account" (collectively "dishonored checks").

The CEP proceeds as follows: merchants enrolled in the CEP program electronically send dishonored checks to BounceBack.[3] Within twenty-four (24) hours of receiving the dishonored check and before entering the data into the CEP's files, BounceBack packages the check data and electronically sends that data to the Prosecuting Attorney for review. Within an additional twenty-four (24) hours, the Prosecuting Attorney may contact BounceBack to remove the check case for ineligibility and return it to the complainant.  If the Prosecuting Attorney does not, the check cases are entered into the CEP's active files.  Eligibility is discerned by a criteria predetermined by the Prosecuting Attorney.  (ECF No. 51, at 9.)  Only "questionable checks" are referred to the Prosecuting Attorney for further review.  *Id*. at 6.

BounceBack sends the same two-letter series, pre-approved by the Prosecuting Attorney and printed on the Prosecuting Attorney's letterhead, to qualifying dishonored-check writers.  First, a Notice of Bad Check is sent to the check writer, which reads:

---

[3]  A merchant qualifies for the CEP program only if he has already contacted the dishonored-check writer and provided an opportunity to make good on the check.  When the CEP was first instituted, checks were sent to the Prosecuting Attorney for screening, and qualifying checks were then sent to BounceBack for administration of the CEP.  Sometime in 2010, the CEP was revised so that checks were sent electronically by the merchant directly to BounceBack.

ORDER * 3

> The Spokane County Prosecuting Attorney's Office has received a complaint against you for issuing a worthless check(s). This complaint may result in a criminal charge of 'unlawful issuance of bank check' being filed against you under Washington Criminal Code. When a merchant in Spokane County files a bad check with our office, we can proceed directly to prosecution. However, we are offering you an opportunity to participate in a Diversion Program.

(ECF No. 47, Ex. A.)

If the check writer elects to participate in the CEP, he makes restitution payments, and pays for and completes educational classes designed to minimize future violations. A check writer is also required to pay a $40.00 Processing Fee per check ($35.00 administrative fee paid to BounceBack and $5.00 fee paid to the Prosecuting Attorney), an $80.00 Program Fee per offender per year, and if necessary, a $25.00 Payment Plan Fee per offender. (ECF No. 56-1, Ex. A.)

If the check writer does not respond to the Notice of Bad Checks within ten (10) days, a Warning of Criminal Charges, similarly approved by the Prosecuting Attorney, is sent to the check writer:

> You have not responded to our NOTICE regarding the worthless check(s) below. You can still avoid possible prosecution by IMMEDIATELY paying the check amounts and the fees.
>
> In Washington, a person writing a worthless check due to Insufficient Funds or Closed or No Account with the bank may be guilty of a criminal offense. If the check(s) is not taken care of, a CRIMINAL COMPLAINT and a SUMMONS may be issued commanding you to appear in court and a CRIMINAL RECORD may result.

(ECF No. 47, Ex. B.)

If the check writer participates in and completes the CEP, no criminal charges will be filed. If he does not, BounceBack sends the dishonored check back to the merchant, advising him that he may refer the matter to law enforcement. *Id.* at 4. Because the Prosecuting Attorney

ORDER * 4

1  does not employ investigators, it generally files charges only after

2  referral from law enforcement. *Id*. at 5.

3      BounceBack handles all aspects of CEP administration: it sends out

4  notices, contacts check writers by phone, handles restitution accounts,

5  issues restitution checks to victims, distributes reports to the

6  prosecutor, and returns cases to the prosecutor for review for possible

7  prosecution. BounceBack does not, however, exercise discretion as to

8  which check writers are eligible to participate in the CEP. The

9  Prosecuting Attorney retains sole discretion over charging decisions.

10     On or about March 22, 2008, Plaintiff wrote, and later had

11 returned, a non-sufficient-funds check made out to Safeway. Safeway

12 offered Plaintiff an opportunity to make the check good, with a mandatory

13 penalty assessed in addition to the balance owed. Plaintiff did not

14 pay. Safeway delivered the check to the Prosecuting Attorney for

15 screening. The check and related information was forwarded to BounceBack

16 for CEP administration.

17     Plaintiff filed this class-action lawsuit on December 4, 2009.

18 Plaintiff's Complaint alleges that the Prosecuting Attorney, Mr. Tucker,

19 and BounceBack's use of the CEP violates Washington's Collection Agency

20 Act (WCAA), RCW 19.16 et seq., Washington's Consumer Protection Act

21 (WCPA), RCW 19.86 et seq., the Fair Debt Collection Practices Act

22 (FDCPA), 15 U.S.C. § 1962, the Civil Rights Act, 42 U.S.C. § 1983, and

23 state constitutional prohibitions against unlawful gifts of public funds.

24 Defendants moved for summary-judgment dismissal of all claims asserted

25 in Plaintiff's Complaint on December 13, 2010.

26 /

## II.   DISCUSSION

Underlying all Plaintiff's claims is the assertion that the Prosecuting Attorney cannot warn or threaten a check writer with criminal prosecution under RCW 9A.56.060(1) without first determining whether probable cause is present.  Seeking summary dismissal of all Plaintiff's claims, Defendants argue a probable-cause finding is not a necessary prerequisite to the implementation of the CEP, but that RCW 9A.56.060 creates probable cause to support a criminal charge.

### A.   Standard

Summary judgment is appropriate if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Once a party has moved for summary judgment, the opposing party must point to specific facts establishing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  If the nonmoving party fails to make such a showing for any of the elements essential to its case for which it bears the burden of proof, the trial court should grant the summary judgment motion. *Id.* at 322.  "When the moving party has carried its burden of [showing that it is entitled to judgment as a matter of law], its opponent must do more than show that there is some metaphysical doubt as to material facts.  In the language of [Rule 56], the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (citations omitted) (emphasis in original opinion).

ORDER * 6

When considering a motion for summary judgment, a court should not weigh the evidence or assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). This does not mean that a court will accept as true assertions made by the non-moving party that are flatly contradicted by the record. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

**B.   FDCPA**

The FDCPA prohibits debt collectors from falsely, deceptively, or misleadingly representing a debt. 15 U.S.C. § 1692e. To be liable under the FDCPA, a defendant must qualify as a "debt collector," which § 1692a(6)(C) defines as:

> any person who uses any instrument or instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

*Id.* § 1692a(6). Here, the CEP sends notices via U.S. mail to alleged bad-check writers to collect debts[4] owed to others. Accordingly,

---

[4] "[A] dishonored check is a 'debt' within the meaning of the FDCPA." *Charles v. Lundgren & Assocs., P.C.*, 119 F.3d 739, 742 (9th Cir. 1997). Accordingly, Plaintiff's check, which was written for personal, family, or household purposes as the FDCPA requires, constitutes a debt

ORDER * 7

Defendants' actions are covered by the FDCPA unless some exemption or exception applies.

    1)    <u>Exemptions to FDCPA Coverage</u>

        a.   *Government Actor Exemption*

Section 1692a(6)(C) of U.S.C. Title 15 exempts from FDCPA liability "any officer or employee of the United States or any State to the extent that collecting or attempting to collect any debt in the performance of his official duties." Plaintiff argues that the Prosecuting Attorney does not act in performance of his official duties when he participates in the CEP because collecting a debt for a private individual does not fall within his statutorily-defined duties under RCW 36.27.020. The Court disagrees.

Under RCW 36.27.020, a prosecuting attorney shall prosecute actions "for the recovery of debts." Because the Prosecuting Attorney does not have the funds to individually prosecute each dishonored check, it has contracted with BounceBack to provide the CEP, a less expensive alternative that achieves prosecutorial goals. The Prosecuting Attorney retains all prosecutorial discretion and develops the CEP's eligibility requirements. (ECF No. 56-1, at 10.) Thus, the evidence shows that the Prosecuting Attorney's involvement with the CEP is part of his government employment responsibilities. *See Brannan v. U.S. Aid Funds, Inc.*, 94 F.3d 1260, 1263 (9th Cir. 1996) (recognizing that the government-actor exemption "applies only to an individual government official or employee

_____

for FDCPA purposes. *See id.*; 15 U.S.C. § 1692a(5) (defining "debt" for FDCPA purposes to include only an "obligation . . . primarily for personal, family, or household purposes").

ORDER * 8

1  who collects debts as part of his employment responsibilities").

2  Accordingly, the Court concludes that the Prosecuting Attorney is exempt

3  from FDCPA coverage.

4          b.   *Private Bad-Check Enforcement Entity Exemption*

5          Effective October 13, 2006, the FDCPA also exempts the conduct of

6  private entities engaged in operating bad-check enforcement programs on

7  behalf of a State or district attorney.  *See* 15 U.S.C. § 1692p.  Under

8  such programs, contact with any alleged offender can be made "only as a

9  result of any determination by the State or District attorney that

10  probable cause of a bad check violation under State penal law exists, and

11  that contact with the alleged offender for purposes of participation in

12  the program is appropriate."  *Id.* § 1692p(a)(C)(iv)(I).

13         The latest agreement between BounceBack and the Prosecuting Attorney

14  was executed on September 7, 2006, (ECF No. 56-1); thus, because

15  BouceBack operated as a bad-check enforcement entity before § 1692p's

16  effective date, BounceBack can rely on the exemption only if § 1692p is

17  retroactively applied.  Here, because applying § 1692p retroactively

18  would potentially preclude Plaintiff from seeking relief under the FDCPA,

19  at least one district court has found that Congress did not intend for

20  the statute to apply retroactively.  *See Schwarm v. Craighead*, 552 F.

21  Supp. 2d 1056 (E.D. Cal, 2008).  The Court similarly concludes that

22  BouceBack is not exempt from the FDCPA based on its contract with the

23  Prosecuting Attorney.[5]

24  _____

25         [5]  But if Congress intended for § 1692p to apply retroactively,

26  BounceBack could avoid liability under the FDCPA pursuant to that

section.  To seek safe harbor under § 1692p, the private entity operating

ORDER * 9

   2)   <u>FDCPA Violations</u>

   Plaintiff alleges that BounceBack's practice of demanding payment
of money backed by the threat of prosecution by the Prosecuting Attorney
without probable cause to believe the person has committed a crime
violates subsections (1) and (2) of § 1692e, which define conduct that
violates § 1692e's prohibition against "false, deceptive, or misleading
representation or means in connection with the collection of any debt."
*Id.* § 1692e.

   a.   *Subsection 1692e(1)*

   Subsection 1692e(1) prohibits "[t]he false representation or
implication that the debt collector is vouched for, bonded by, or
affiliated with . . . any state, including the use of any badge, uniform
or facsimile thereof."   Here, the letters sent to check writers are
printed on the Prosecuting Attorney's letterhead.   Mr. Tucker's name is
printed on the top right hand corner.   Nowhere is BounceBack's name
printed on, or otherwise associated with, the letters.   As such, the
letters appear to be from the Prosecuting Attorney.   Indeed, as evidenced
by the September 7, 2006 Agreement between BounceBack and the Prosecuting
Attorney, the undisputed evidence shows that BounceBack is expressly
authorized to send letters on the Prosecuting Attorney's behalf.
Plaintiff has failed to put forth any evidence that would create an issue
of fact as to whether BounceBack's letters falsely represent that

_____

the bad check enforcement program must have made a probable cause
determination.   As discussed below, the CEP's eligibility requirements,
combined with RCW 9A.56.060's prima facie provision, establishes the
probable cause necessary to contact the dishonored-check writers.

ORDER * 10

BounceBack "is vouched for, bonded by, or affiliated with" the Prosecuting Attorney. Accordingly, the CEP does not violate § 1692e(1).

### b. *Subsection 1692(2)*

Subsection 1692e(2) prohibits "[t]he false representation of . . . the character, amount, or legal status of any debt." Statements in debt collection letters are threats of legal action without intent where they are "calculated to intimidate the least sophisticated consumer into believing that legal action against her is imminent and that the debtor's only options are either payment or being sued." *Schwarm*, 552 F. Supp. 2d at 1077 (citing *Irwin v. Mascott*, 112 F. Supp. 2d 937, 951 (N.D. Cal. 2000)). Even if the letter uses conditional language such as "may" or "possible" it may still be a threat if the letter could lead the "least sophisticated debtor" into believing that legal action is imminent. *See Baker v. G.C. Servs. Corp.*, 677 F.2d 775, 779 (9th Cir. 1982) (upholding district court determination that a statement was a threat when it "created the impression that legal action by defendant is a real possibility").

The first notice informs the check writer that the Prosecuting Attorney has received a complaint against him for issuing a bad check. It informs the check writer that the complaint "may result in a criminal charge," for violation of RCW 9A.56.060(1). But instead of "proceed[ing] directly to prosecution," the notice offers the diversion program which "gives [the check writer] an opportunity to pay [his] check(s) and the fees before the case is forwarded to prosecution." (ECF No. 47, Ex. A.) The second notice is more direct. It informs the check writer that he has not responded, but that the check writer can "still avoid prosecution by IMMEDIATELY paying the check amounts and fees." *Id*. Ex. B. "If the

ORDER * 11

1  check(s) is not taken care of, a CRIMINAL COMPLAINT and a SUMMONS may be
2  issued commanding you to appear in court and a CRIMINAL RECORD may
3  result." *Id*.

4      Nowhere in these notices does it indicate that the Prosecuting
5  Attorney will charge any individual with a crime.  Yet the two letters,
6  taken together, imply that the debtor's failure to pay could result in
7  criminal prosecution.  But the letters violate subsection (2) only if
8  BounceBack misrepresented the legal status of the debt.  Thus, the Court
9  must look to common law principles to determine whether BounceBack could
10 legally initiate criminal investigations, arrests, or prosecutions for
11 violations of Washington's bad check statute, RCW 9A.56.060(1).

12     Plaintiff alleges that the Prosecuting Attorney cannot warn or
13 threaten a check writer with criminal prosecution under RCW 9A.56.060(1)
14 without first determining that probable cause is present.  In response,
15 Defendants argue that the CEP does not require a threshold finding of
16 probable cause before initiating the CEP.

17     While the FDCPA requires a prosecutor to determine that probable
18 cause exists to come within § 1692p's exemption for private bad-check
19 enforcement entities like BounceBack, neither party cites, and the Court
20 cannot find, a Washington statute requiring probable cause to believe
21 that Washington's bad check statute, RCW 9A.56.060(1), has been violated
22 before initiating the CEP.  *Cf*. Ca. Penal Code § 1001.60 (establishing
23 that California's bad check program applies only to "persons who write
24 bad checks" and explaining that "'writing a bad check' means making,
25 drawing, uttering, or delivering any check or draft upon any bank or
26 depository for the payment of money where there is probable cause to
   believe [the check writer willfully issued a bad check with the intent

ORDER * 12

to defraud]"); *see also Schwarm*, 552 F. Supp. 2d at 1078 (recognizing that, in California, bad check enforcement programs can "send a letter to an individual only if there is probable cause to believe [the check writer willfully issued a bad check with the intent to defraud]").

When the check writer is contacted to participate in the CEP, no criminal charges have been filed. No arrests have been made. Once contacted, a check writer has the choice to either 1) pay the amount of restitution demanded, or 2) do nothing, thereby requiring the Prosecuting Attorney to demonstrate probable cause and charge the alleged offense and then prove all statutory elements beyond a reasonable doubt. In the absence of any statutory or case law requiring a probable cause finding, the Court concludes Defendants need not have probable cause before contacting potential RCW 9A.56.060(1) violators.

But even if probable cause was necessary, Defendants argue the CEP establishes probable cause to believe that RCW 9A.56.060(1) has been violated. Probable cause supporting a criminal charge is a relatively low standard. *Rucker v. Davis*, 203 F.3d 627 (9th Cir. 2000) (comparing probable cause to the higher standard of preponderance of the evidence). Probable cause is present when, "under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that the defendant had committed a crime." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007) (quoting *United States v. Smith*, 790 F.2d 789, 792 (9th Cir. 1986)).

Under RCW 9A.56.060(1), a person is guilty of unlawful issuance of a bank check if:

> with intent to defraud, make, or draw, or utter, or deliver, to another person any check, or draft, on a bank or other depository for the payment of money, knowing at the time of

*such drawing, or delivery, that he or she has not sufficient funds in, or credit with the bank or other depository, to meet the check or draft, in full upon its presentation . . . [t]he uttering or delivery of such a check or draft to another person without such fund or credit to meet the same shall be prima facie evidence of an intent to defraud.*

RCW 9A.56.060(1) (emphasis added).  Under statutes providing statutory presumptions like RCW 9A.56.060(1), a basic fact may constitute prima facie evidence of an elemental fact so long as its not the sole and sufficient basis for the finding of guilt.  *Cnty. Ct. of Ulster Cnty., N.Y. v. Allen,* 442 U.S. 140, 157 (1979).  Similar prima facie provisions have been upheld as constitutional.  *Cobb v. State*, 272 S.E.2d 299 (Ga. 1980); *Tolbert v. State*, 321 So. 2d 227 (Ala. 1975).

The CEP, taken together with RCW 9A.56.060(1)'s prima facie provision, establishes probable cause to believe Plaintiff wrote a check with intent to defraud, knowing that he had insufficient funds in his account.  It is undisputed that, in order to qualify for the CEP, merchants must have informed a check writer that his check was returned due to insufficient funds and attempted to collect payment from the check writer before submitting the check to BounceBack.  Indeed, Safeway contacted Plaintiff, offering him an opportunity to make the check good (which Plaintiff declined) before submitting the check to BounceBack. Once submitted, BounceBack forwards the check in electronic-data-package form so that the Prosecuting Attorney may review it.[6]  "[A]bsent a notice

---

[6]  Citing no authority, Plaintiff broadly argues that probable cause "must be found to exist by some person having legal authority to do so, such as a prosecutor or judge."  (ECF No. 50, n.9.)  The Court cannot agree: given the CEP's eligibility requirements and RCW 9A.56.060(1)'s

ORDER * 14

of exclusion from the prosecutor during a 24 hour period, the check cases are entered into the CEP's active files" and BounceBack notifies the check writers by the two-letter series.  (ECF No. 55.)

From these facts, a prudent person would have concluded, based on the statutory presumption of intent to defraud Safeway's previous contact with Plaintiff, there is a fair probability that Plaintiff wrote the check with intent to defraud and knowledge that he had insufficient funds in his account.[7]  *See Washington v. Ben-Neth*, 34 Wn. App. 600, 663 (1983) (upholding jury verdict concluding that defendant wrote checks with intent to defraud knowing of his insufficient funds when he continuously overdrew account despite being contacted numerous times by creditors). Accordingly, Plaintiff has failed to put forth any facts demonstrating the CEP violates § 1692e(2).

## C.  WCAA and WCPA Violations

Plaintiff alleges Defendants violated the WCAA by seeking to obtain payments from check writers by threatening criminal prosecution without probable cause, in violation of RCW 19.16.250(13). (ECF No. 1, ¶¶ 24 & 27.)  He also alludes to a WCAA violation under RCW 19.16.110 and RCW 19.16.260 for conducting collection activities without being licenced as

---

prima facie provision, the possibility that a check could be processed without a prosecutor actually reviewing it is immaterial.

[7]  "Generally, officers need not have probable cause for every element of the offense [to make a warrantless arrest], but they must have probable cause for specific intent when it is a required element." *Edgerly v. City & Cnty. of San Francisco*, 495 F.3d 645, 651 (9th Cir. 2007).

ORDER * 15

a collection agency.  Plaintiff's WCPA claims are presumably based on the same alleged violations of the WCAA.[8]

Defendants contend they are entitled to summary judgment on these claims because Defendants do not meet the definition of "collection agency" and thus need not be licensed.

1) <u>Eligibility</u>

Defendants claim they do not meet the definition of a "Collection Agency" under the WCAA.  Plaintiff disagrees.  Under Washington's Collection Agency Act, a "Collection Agency" includes:

> (a) Any person directly or indirectly engaged in soliciting claims for collection, or collecting or attempting to collect claims owed or due or asserted to be owed or due to another person; and
> (b) Any person who directly or indirectly furnishes or attempts to furnish, sells, or offers to sell forms represented to be a collection system or scheme intended or calculated to be used to collect claims even though the forms direct the debtor to make payment to the creditor and even though the forms may be or are actually used by the creditor himself or herself or in his or her name.

---

[8] The WCPA makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ."  RCW 19.86.020.  A WCPA claim requires proof of either "a per se violation of a statute, or an unfair or deceptive practice unregulated by statute but involving the public interest." *Watkins v. Petersen Enters., Inc.*, 57 F. Supp. 2d 1102, 1109 (E.D. Wash. 1999) (quoting *Evergreen Collectors v. Holt*, 60 Wn. App. 151, 154 (1991)).  A violation of RCW 19.16.250 (the WCAA) is a per se unfair trade practice.  *See* RCW 19.16.440 (declaring an act or practice prohibited by RCW 19.16.250 an unfair method of competition for WCPA purposes).

ORDER * 16

RCW 19.16.100(2).  The funds collected under the CEP are claims[9] owed to other persons, namely the merchants who participate in the program; they are not owed to either BounceBack or the Prosecuting Attorney.  The statute does not contain an exemption similar to the FDCPA's for private entities engaged in operating bad check enforcement programs on behalf of a State or district attorney. *Compare* RCW 19.16.100(3) *with* 15 U.S.C. § 1692p(a)(C)(iv)(I).  Although common sense would reveal that those sorts of entities would be excluded, in the absence of such an exemption, BounceBack qualifies as a collection agency.

RCW 19.16.100(3)(c) does, however, exempt from the definition of a collection agency "public officers acting in their official capacity." For the same reasons as set forth above, the Prosecuting Attorney is exempt from WCAA liability.

    2)   <u>RCW 19.16.250(13): Simulation of the Appearance of Judicial Process</u>

RCW 19.16.250(13) prohibits any collection agency from communicating with a debtor through use of forms or instruments that simulate the appearance of the judicial process.  Neither party cites, nor can the Court find, any federal or state case law interpreting this subsection. Here, as discussed above, Plaintiff has failed to put forth any evidence indicating that the Prosecuting Attorney misrepresented his legal authority to initiate criminal investigations, arrests, or prosecutions for violations of Washington's bad check statute, RCW 9A.56.060(1).

---

[9] Under RCW 19.16.100(5), "'[c]laim' means any obligation for the payment or money or thing of value arising out of any agreement or contract, express or implied."

ORDER * 17

Accordingly, there is no evidence that the Notices improperly simulate the appearance of the judicial process.

**D.   Civil Rights**

Plaintiff's Complaint alleges Defendants' conduct violates Plaintiff's due process rights to be free from arbitrary and capricious acts and threats of prosecution, arrest, or detention without probable cause.  (ECF No. 1, ¶ 23.)   Defendant moves to dismiss this claim because Plaintiff failed to cite any authority establishing this right.

Section 1983 provides a cause of action against persons acting under color of state law who have violated rights guaranteed by the U.S. Constitution or federal statutes.  42 U.S.C. § 1983[10]; *Buckley v. City of Redding*, 66 F.3d 188, 190 (9th Cir. 1995).  The plaintiff must show the state actor's conduct violated the plaintiff's clearly-established constitutional or federal right.  *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009) (ruling that either of these elements may be analyzed first); *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Yet, a state actor is protected from liability if he shows that he is entitled to qualified immunity, i.e., his "conduct does not violate clearly established statutory or Constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A private

---

[10] Section  1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

ORDER * 18

party may be liable for the violation of a person's civil rights when the party is a willful participant in joint action with the State or its agencies. *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540 (9th Cir. 1989).

Here, BounceBack and the Prosecuting Attorney were acting under the color of state law. To satisfy the second element of the § 1983 claims, Plaintiff does not argue that Defendants violated a right provided by the FDCPA; rather, he argues that Defendants violated his right to be free from threat of prosecution and arrest without probable cause. Plaintiff fails to cite to any applicable case law.

In *United States v. Sanchez*, 74 F.3d 562 (5th Cir. 1996), the defendant police officer was convicted under 18 U.S.C. § 242 for misdemeanor civil rights violations when he allegedly "used the threat of arrest to coerce five suspected prostitutes to engage in various sexual acts with him against their will." *Id.* at 563. And in *Dean v. Byerley,* 354 F.3d 540 (6th Cir. 2004), recognizing that the plaintiff had a constitutionally protected right to engage in "peaceful targeted residential picketing," the Court found a question of fact precluding summary judgment as to whether the defendant's threat to have the picketers arrested violated that right. *Id.* at 557-59. Thus, these cases are distinguishable: neither establishes an individual's constitutional right to be free from notification that the possibility of prosecution exists without probable cause to believe the crime was committed.

Furthermore, Plaintiff failed to put forth any evidence of a due-process-based constitutional violation based on the deprivation of property. When viewed outside the context of the FDCPA, the CEP letters

ORDER * 19

1  are not false, misleading, or coercive: they clearly articulate the

2  Prosecuting Attorney's legal authority to prosecute the case.

3  Accordingly, there is no evidence the CEP deprives Plaintiff of his

4  property interests by "transform[ing] [his] voluntary remission of

5  payments to involuntary deprivations of property." *Schwarm*, 552 F. Supp.

6  2d at 1084.  Accordingly, the Court finds Plaintiff failed to put forth

7  evidence establishing a constitutional violation.

8  **E.    Unconstitutional Gift of Public Funds**

9      Defendants seek summary dismissal of Plaintiff's claim that the

10  contract between the Prosecuting Attorney and BounceBack constitutes an

11  unlawful gift of public funds, in violation of the Washington

12  Constitution.  (ECF No. 1, ¶ 25.)

13      Article 8, § 5 of the Washington State Constitution provides: "The

14  credit of the state shall not, in any manner be given or loaned to, or

15  in aid of, any individual, association, company or corporation."  Under

16  this provision, the State may not confer a pecuniary benefit upon any

17  private entity without reciprocal consideration.  *See State Health Care*

18  *Facilities Auth. v. Ray*, 93 Wn.2d 108 (1980).

19      And Article 8, § 7 provides:

20      No county, city, town or other municipal corporation shall
        hereafter give any money, or property, or loan its money or
21      credit to or in aid of any individual, association, company or
        corporation, except for the necessary support of the poor and
22      infirm, or become directly or indirectly the owner of any stock
        in or bonds of any association, company or corporation.

23

24      The expenditure of public funds for the benefit of a private

    individual or corporation does not, however, violate these provisions if

25  it is for a "recognized governmental function."  *See CLEAN v. State,* 130,

26  Wn.2d 782, 797 (1996); *In re Marriage of Johnson*, 96 Wn.2d 255 (1981)

ORDER * 20

1   (upholding expenditure of public funds for enforcing child support orders

2   on the grounds that public enforcement of child support obligation is a

3   recognized government function).

4        Here, no public-funds gift has been made.  True, the Prosecuting

5   Attorney's use of the CEP is an expenditure of funds for the benefit of

6   a private corporation (BounceBack) and merchants who submit dishonored

7   checks.  But the CEP helps carry out the fundamental government purposes

8   of deterring criminal behavior, enforcing criminal laws, providing

9   restitution to merchants who receive dishonored checks.  And the CEP does

10  more than simply collect debts owed to merchants as restitution: it

11  serves an important rehabilitative function by teaching check writers how

12  to manage their debt.   Furthermore, Plaintiff cannot show that the

13  Prosecuting Attorney had donative intent when contracting with

14  BounceBack.  *See Eugster v. City of Spokane*, 139 Wn. App. 21, 32 (2007)

15  (recognizing that the Washington Constitution is not implicated absent

16  donative intent). Accordingly, Plaintiff's Washington-Constitution claim

17  is dismissed: Plaintiff failed to set forth any facts demonstrating an

18  unconstitutional gift of public funds.

19       Accordingly, **IT IS HEREBY ORDERED:**

20       1.   Defendants' Joint Motion for Summary Judgment **(ECF No. 43)** is

21  **GRANTED.**

22       2.   **JUDGMENT** is to be entered in Defendants' favor with prejudice.

23       3.   All pending trial and hearing dates are **STRICKEN.**

24       4.   This file shall be **CLOSED.**

25       **IT IS SO ORDERED.**  The District Court Executive is directed to enter

26  /

ORDER * 21

this Order and provide a copy to counsel.

**DATED** this____27th_____ day of April 2011.


                            S/ Edward F. Shea
                           EDWARD F. SHEA
                   United States District Judge


Q:\Civil\2009\360.MSJ.wpd

ORDER * 22